[Cite as *In re M.U.*, 2014-Ohio-1640.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: M.U., C.U., and J.D. | : | APPEAL NOS. C-130809 |
| | | C-130827 |
| | : | TRIAL NO. F07-2858 |
| | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 18, 2014

*Susannah M. Meyer,* for Appellant Mother*,*

*Erik Laursen*, for Appellants M.U. and C.U.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ernest W. Lee*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Marjorie Davis,* for Appellee Guardian Ad Litem.


Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1}    On November 22, 2013, the trial court terminated the parental rights of mother to her three children, M.U., C.U., and J.D.  Mother and two of her children, M.U. and C.U., now appeal.  We affirm the decision of the trial court.

{¶2}    The Hamilton County Department of Job and Family Services ("HCJFS") became involved in the lives of mother's children in 2007 when it filed a complaint alleging that the children were dependent.  Mother suffered from mild mental retardation, and HCJFS was concerned that she was unable to provide a safe environment for the children.  Her care for the children was inconsistent and, at times, inadequate.  In addition, HCJFS was concerned with mother's involvement with men who presented a risk to the children.  One man from Iowa moved in with mother after she had known him for about one week through only telephone conversations.  This man had a history of substance abuse and a criminal record.  While living in the home, he refused to participate in either a diagnostic or substance-abuse assessment through HCJFS.  Eventually, allegations arose that the man was sexually assaulting one of the children.  An investigation commenced, but was halted when the child refused to cooperate with workers from the Mayerson Center.  Mother eventually obtained a restraining order against him.  The magistrate determined that the children could remain with mother, with various protective orders in place, and a pending motion to terminate her parental rights was denied in June 2008.

{¶3}    One month later, HCJFS filed a new complaint alleging that the children were neglected and dependent, and requesting temporary custody.  The home had bed bugs, and this prevented the children from attending the protective

daycare that had been part of the June 2008 order. In addition, HCJFS alleged that mother was not attending to the children's basic needs. M.U. had glass embedded in her foot, J.D. was wearing a filthy diaper, and all three children were dirty. HCJFS further alleged that the home was filthy, and that the children were not receiving proper nutrition or medical care. The magistrate adjudicated the children dependent and granted the request for temporary custody. Mother was offered numerous programs to help her improve her parenting skills.

{¶4} At a case review hearing one year later, HCJFS announced the decision to again seek termination of mother's parental rights. While mother had made some progress with her parenting skills, she did not seem to be making lasting changes in her behavior or decision-making. In addition, HCJFS had learned that mother had begun seeing a registered sex offender. This man, whom mother had met on the internet, had been convicted of a sex offense involving a minor. She also became involved with another man, with whom she had a child that was placed with the father's parents. As a result of these relationships, HCJFS was concerned that she was still making bad decisions regarding the men with whom she involved herself.

{¶5} After conducting the permanent-custody trial, the magistrate determined that mother's progress with the various programs in which she had been enrolled demonstrated that she had advanced to the point where the children could return to her custody. Regarding her judgment about men, the magistrate noted his concern that this issue had not been addressed in her counseling, and determined that it could properly be addressed through counseling and the issuance of a protective order requiring that mother have no other adult living in the home and

that she report the identity of any adult who had regular contact with the children to HCJFS and the children's guardian ad litem.

{¶6} On June 11, 2012, HCJFS filed an amended complaint alleging that the children were dependent, and seeking permanent custody. The agency once again complained that mother was exercising poor judgment when it came to the men with whom she associated. The agency presented evidence that mother had violated the court's protective orders by allowing at least two men to live in her home and have ongoing contact with the children without providing notice to HCJFS or the children's guardian. She actively concealed her relationships and the children's contact with these men, and indicated that she did not believe that she was required to comply with the court's orders for protective supervision. The children reported that at least one of the men was mean, had stolen property from mother, had hit the children, and had disciplined them without mother's knowledge. The identities and background of the men were unknown—other than the fact that the children knew one of them as "Michael"—because HCJFS was unable to investigate them. The magistrate found the children to be dependent and granted HCJFS's motion for permanent custody. The trial court overruled the objections filed by M.U. and C.U., as well as those filed by mother.

{¶7} In her first assignment of error, mother claims that her counsel was ineffective for failing to seek dismissal of HCJFS's motion for permanent custody because the trial court failed to timely rule on it. To have the case reversed on a claim of ineffective assistance of counsel, mother must prove that counsel violated an essential duty that he owed to her and that she was prejudiced by the violation. *See State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny

of counsel's performance must be highly deferential. An appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland* at 689. An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988).

{¶8} R.C. 2151.35(B)(1) requires that, when the state seeks permanent custody of a child, the dispositional hearing on that motion must be held within 90 days. If it is not, "the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice."

{¶9} Mother argues that trial counsel is necessarily ineffective in failing to seek dismissal whenever the deadline set by R.C. 2151.35(B)(1) passes. We cannot accept this proposition. The problem with this argument is that it supposes that there is no situation in which competent trial counsel would decide that it was better to proceed with the matter than to seek dismissal.

{¶10} Dismissal of a parental-termination case without prejudice is not always the best outcome for the parties involved—even for the parents. The Ohio Supreme Court discussed a similar issue when analyzing another statute, R.C. 2151.35(B)(3). That statute provides that a juvenile court must enter its disposition of a child adjudicated as abused, neglected or dependent within seven days of the conclusion of the hearing. *In re Davis*, 84 Ohio St.3d 520, 523, 705 N.E.2d 1219 (1999). Finding that the statutory deadline was not mandatory, the court reasoned that:

> a missed deadline would require either that the child be returned to a
> potentially risky home situation, or that a new complaint be filed and

the process begun anew, delaying the final resolution of the issue even further. Such consequences would not serve the interests of children, who are too often relegated to temporary custody for too long.

*Id.* at 523.

{¶11} The same rationale applies when considering the time limitation imposed by R.C. 2151.35(B)(1). There are certainly situations, such as the case at bar, in which competent counsel would not seek dismissal of the permanent-custody petition without prejudice. Dismissal would have only delayed the proceedings further, and would not have allowed mother the continued opportunity to show compliance with the trial court's orders and progress in the various programs in which she participated. And there is nothing in the record to suggest that dismissal would have ended the case. The history of the case indicates that HCJFS would certainly have refiled its request for the termination of mother's parental rights had the case been dismissed without prejudice under the statute. Furthermore, there is no evidence in the record that mother even wanted to expedite the matter, as she had expressly waived "any objection to the completion of the adjudication and/or disposition within 90 days of the filing of the complaint" at the first hearing held after the 90-day period had expired. It is also worth noting that, not only was mother represented by trial counsel, but also, because of her mental health issues, the trial court had appointed her a guardian ad litem. So, in this case, mother's interests were protected by two professionals over the course of this seven-year process.

{¶12} In light of this record, the detrimental impact that having the case begin anew would have had on all parties involved, and the deference that courts afford to the tactical decisions of trial counsel, we cannot say that mother has shown

6

that counsel was ineffective in this case. Therefore, we overrule her first assignment of error.

{¶13}   In mother's second assignment of error, she claims that the trial court erred when it failed to properly consider the factors listed in R.C. 2151.414(D)(1) in support of its decision to terminate her parental rights. In a related assignment of error, M.U. and C.U. specifically argue that the trial court failed to properly consider their wishes, as required by R.C. 2151.414(D)(1)(b). We disagree.

{¶14}   Before it could grant permanent custody to HCJFS, the trial court was required to determine by clear and convincing evidence that permanent custody was in the best interest of the children. *See* R.C. 2151.414(B); *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Under R.C. 2151.414(D)(1), to determine a child's best interest,

> the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard to the maturity of the child;
>
> (c) The custodial history of the child * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section

apply in relation to the parents and child.

"There is not one element that is given greater weight than the others pursuant to the statute." *Schaefer* at ¶ 56.

{¶15}   We conclude that the trial court considered each of the factors listed above, including its consideration of the fact that M.U. and C.U. had "expressed a desire to return to Mother's home."  But the trial court concluded that this one factor supporting reunification did not outweigh the factors that supported termination of mother's parental rights.  She refused to properly notify HCJFS and the children's guardian ad litem about the men that she brought into the lives of her children, and stated that she did not think she had to follow the court's order in that regard.  And her decisions regarding men have been a problem in this case since its inception in 2007.  Additionally, the children's guardian ad litem joined HCJFS in its opposition to reunification.  Therefore, there was ample justification in the record to support the decision of the trial court to terminate mother's parental rights, even though the children wished to return to her.  We overrule mother's second assignment of error and the sole assignment of error of M.U. and C.U.

{¶16}   Having considered and overruled all assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J.**, and **HILDEBRANDT, J.**, concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.