[Cite as *In re N.P.*, 2015-Ohio-4912.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:                                                        CASE NO. 9-15-22

    N.P.,

ABUSED, NEGLECTED,                                    O P I N I O N
DEPENDENT CHILD.

[CRYSTAL R. - APPELLANT]

IN RE:

    C.R.,                                                    CASE NO. 9-15-23

ABUSED, NEGLECTED,                                    O P I N I O N
DEPENDENT CHILD.

[CRYSTAL R. - APPELLANT]

**Appeals from Marion County Common Pleas Court
Juvenile Division
Trial Court No. 2012-AB-0040 & 2012-AB-0041**

**Judgments Affirmed**

**Date of Decision:  November 30, 2015**

**APPEARANCES:**

    *Kevin P. Collins* **for Appellant**

    *Justin Kahle* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} The appellant, Crystal R. ("Crystal"), brings these appeals from the judgments of the Court of Common Pleas of Marion County, Family Division, terminating her parental rights and granting permanent custody of the minor children to the appellee Marion County Children Services Board ("MCCSB"). Crystal claims that the trial court's judgments are not supported by the evidence. For the reasons set forth below, the judgments are affirmed.

{¶2} This case first started on March 26, 2012, when MCCSB filed a complaint alleging that C.R. and N.P. were neglected and dependent children. C.R. Doc. 1, N.P. Doc. 1. The complaints alleged that C.R. was born in February of 2010 and N.P. was born in December of 2011 to Crystal and Carl P. ("Carl"). *Id.* The complaints also alleged that the children were neglected as a result of Crystal's use of cocaine, marijuana, and heroin. *Id.* The children were not removed from Crystal's home at that time. C.R. Doc. 7, N.P. Doc. 7. However, on April 19, 2012, the children were removed from the home after Crystal's mother, who was acting as the in-home safety plan monitor, had to leave the state. C.R. Doc. 8, N.P. Doc. 8. The trial court granted emergency custody of the children to MCCSB on April 20, 2012. C.R. Doc. 9, N.P. Doc. 9.

{¶3} An adjudication hearing was held in July. C.R. Doc. 28, N.P. Doc. 26. The trial court entered judgment on August 3, 2012, finding the children to be dependent and dismissing the neglect claim without prejudice. *Id.* The

dispositional hearing was held on September 20, 2012. C.R. Doc. 35, N.P. Doc. 32. On February 1, 2013, the trial court entered an agreed judgment entry continuing the temporary custody of C.R. and N.P. with MCCSB. *Id.* The case plan was incorporated into the disposition. C.R. Doc. 36, N.P. Doc. 33.

{¶4} On March 5, 2013, MCCSB filed a motion for an annual review of the case and an extension of temporary custody. C.R. Doc. 37, N.P. Doc. 34. The motion indicated that Crystal was complying with the case plan, was having unsupervised visits in her home, and that reunification in the near future was possible. *Id*. The trial court approved the annual review on April 30, 2013, continuing MCCSB's temporary custody of C.R. and N.P. C.R. Doc. 40, N.P. Doc. 37.

{¶5} On September 13, 2013, MCCSB filed a new case plan with the trial court indicating that Crystal was no longer compliant with the case plan. C.R. Doc. 44, N.P. Doc. 40. The plan indicated that Crystal had failed a hair follicle test, which indicated that she had used cocaine. *Id*. The plan also indicated that Crystal was not following through with her counseling. *Id.* As a result, MCCSB filed a motion for contempt indicating that Crystal was not following the court's order to comply with the case plan by 1) failing to follow the counseling recommendations, 2) not visiting with the children since May of 2013, 3) failing to cooperate with her caseworker, and 4) not cooperating with drug testing. C.R. Doc. 45, N.P. Doc. 41.

**{¶6}** On February 13, 2014, MCCSB filed a motion for permanent custody of C.R. and N.P. C.R. Doc. 57, N.P. Doc. 53. The motion indicated that the children had been in the temporary custody of MCCSB for more than twelve months of a consecutive 22 month period and that the children could not or should not be placed with either parent within a reasonable amount of time. *Id*. The motion also stated that Crystal had demonstrated a lack of commitment toward the children by failing to visit with the children or meet with her caseworker from May 2013 until December 2013. *Id*.

**{¶7}** On August 18, 2014, the Guardian Ad Litem, Nathan Witkin ("Witkin") filed his report. Doc. C.R. Doc. 130, N.P. Doc. 124. Witkin indicated that he did not believe Crystal could parent the children because 1) she had untreated drug abuse issues, 2) she was inconsistent and unstable, and 3) she tended to try and avoid her problems. *Id.* Witkin indicated that Crystal's drug use appeared to indicate an inability to cope with daily stressors. *Id.* Witkin also noted that Crystal lacked steady employment, lacked steady housing, failed to follow through with her drug treatment plan, and missed many visits with the children. *Id*. Another concern Witkin had was that Crystal, when confronted with difficulties in her life, just tried to deny and avoid her problems by dropping out of the case and visits for seven months. *Id.* Witkin concluded that although Crystal "has the basic ability to raise the children, * * * she underestimates her own problems and overvalues her inadequate efforts." *Id*. at 7. Based upon all that he

had learned, Witkin recommended that permanent custody of the children be granted to MCCSB. *Id*. at 11.

{¶8} Hearings on the motions for permanent custody were held on August 6, August 7, and September 23, 2014. C.R. Doc. 156., N.P. Doc. 145. At the start of the first hearing, Carl advised the court that he wished to execute a permanent surrender of his parental rights to the children. *Id.* After fully discussing the issue with Carl, the trial court accepted the surrender and excused Carl from the proceedings. *Id.* MCCSB then presented its case. On April 29, 2015, the trial court entered judgments granting MCCSB's motions for permanent custody. *Id.* Crystal filed timely appeals from the judgments and on appeal raises the following assignment of error.

> **The record contains insufficient evidence to prove clearly and convincingly that granting permanent custody was in the best interest of N.P. and [C.R.].**

{¶9} The sole assignment of error claims that the trial court erred in granting permanent custody of the children to MCCSB. The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." In re Leveck, 3d Dist. No. 5–02–52, 5–02–53, 5–02–54, 2003–Ohio–1269, ¶ 6. These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights,

the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows.

> **(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**
>
> **\* \* \***
>
> **(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period \* \* \*.**
>
> **For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from home.**
>
> **\* \* \***
>
> **(C) In making the determination required by this section \* \* \*, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section \* \* \* but shall not be submitted under oath.**

R.C. 2151.414.

{¶10} The determination whether to grant a motion for permanent custody requires a two-step approach. *In re G.B.*, 10th Dist. Franklin No. 04AP–1024,

2005–Ohio–3141, ¶ 13. The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶11} A review of the record in this case indicates that the children were removed from their home on April 19, 2012. Sixty days from that date would be June 18, 2012. The children were adjudicated to be dependent on August 3, 2012. Thus, pursuant to statute, the date to be used for the purpose of determining a twelve month period out of a consecutive twenty-two month period would be June 18, 2012, as it is the earlier date. The motion for permanent custody was filed on February 13, 2014. This is almost twenty months in custody during a consecutive twenty-two month period. Thus, the portion of the judgment entry finding that the children were subject to the provisions of R.C. 2151.414(B)(1)(d) is supported by the record. Crystal does not contest this finding.

{¶12} This then takes us to the second part of the analysis: the best interests of the children factors set forth in R.C. 2151.414(D). These factors are 1) the interaction and interrelationship of the child with parents, siblings, relatives, foster parents, and anyone else who significantly affects the children; 2) the wishes of the children; 3) the custodial history of the children; 4) the children's needs for permanency; and 5) any factors set forth in R.C. 2151.414(E)(7-11). R.C. 2151.414(D). Although the trial court did not specifically address these

-7-

factors, there is evidence in the record to support the trial court's conclusions regarding the best interests of the children.

{¶13} The first factor is the relationship between the children and the other people in their lives. Testimony was presented that shows that C.R. and N.P. call their foster mother "Mommy" and call Crystal by her name. Sept. 23, 2014 Tr. at 7-8. The foster mother testified that the children were integrated into her family and were loved by all of the family members. Aug. 6, 2014 Tr. at 143. The children have bonded with the other children in the home as well as with the foster parents. *Id*. at 143-44. While the children initially were upset when Crystal stopped visiting, they adjusted *Id*. at 150. When the visits resumed, the children did not appear to know who Crystal was. *Id*. In the foster mother's opinion, the young age of the children has allowed them to "move on" and become a part of her family and she would like to make that relationship permanent. *Id. at 144-150.* Crystal testified that she loved her children, but admitted that she could not parent the children at that time. Aug. 7, 2014 Tr. at 8, 23. Crystal admitted that the foster mother loved the children and that the children were doing well in that placement. *Id*. at 39. The foster mother also indicated that if she were able to adopt the children, she intended to keep contact with both Crystal and Carl so that a relationship of some sort could be maintained with the children. Aug. 6, 2014 Tr. at 146-49.

{¶14} The second factor addresses the wishes of the children as expressed through the guardian ad litem. The children in this case were four years old and two years old at the time of the hearing. Witkin indicated that the best interest of the children would be served by terminating the parental rights of Crystal.

{¶15} The third factor considers the custodial history of the children. The children had been in the foster home since April 19, 2012. At the time of the placement, C.R. was approximately 26 months of age. N.P. was four months of age. At the time of the hearing, C.R. had spent over half of her life in the foster home, while N.P. had spent the majority of her life in the foster home. The children had no contact with Crystal as she ceased all contact with them for more than seven months of that time.

{¶16} In the fourth factor, the trial court must consider the child's need for permanency. The majority of these children's lives had been spent in foster care. At the time of the hearing, Crystal was not capable of parenting and it was unknown how long her recovery from use of illegal drugs would take. The children were very young. C.R. was enrolled in preschool. Aug. 6, 2014 Tr. 138. N.P. had spent every birthday and every Christmas with her foster family. *Id.* at 137-38. The children considered themselves to be a part of that family. Sept. 23, 2014 Tr. at 8.

{¶17} The fifth and final factor would be any of the statutory factors set forth in R.C. 2151.414(E)(7-11). One of these factors addresses whether the

parents abuse drugs and refuse to either participate in treatment, fail to complete treatment, or reject offered treatment. R.C. 2151.414(E)(9). Although the case plan required Crystal to seek treatment for her drug use and she began treatment several times, she never completed it. Aug. 6, 2014 Tr. 30-31, 64-68, 74-75, 100-106. Crystal frequently failed her drug screens, indicating that treatment was still necessary. *Id*. at 43-46, 92, 158. On the first day of the hearing, the trial court asked Crystal to take a drug screen that day, but she declined. *Id*. at 114-15. When asked, Crystal admitted that she was still using marijuana the week before the hearings. Aug. 7, 2014 Tr. 27. Crystal also admitted that did not wish to participate in group counseling and had been terminated from counseling for non-compliance several times. *Id*. at 33.

{¶18} A second concern under the fifth factor would be Crystal's apparent abandonment of the children for several months. R.C. 2151.414(E)(10). From the beginning of June 2013 until the end of December 2013, Crystal disappeared and no one had any contact with her. Aug. 6, 2014 Tr. 64, 122. Crystal admitted that she had just given up and did not make any attempt to see her children or contact anyone, including her caseworker or the GAL, related to the case during that time. Aug. 7, 2014 Tr. 15-20. The effect on the children during that time was that the children "moved on". Aug. 6, 2014 Tr. 150.

{¶19} A review of the record shows that there is competent and credible evidence regarding each of the five factors set forth in R.C. 2151.414(D) to

support the trial court's conclusion that it would clearly and convincingly be in the best interest of the children to terminate the parental rights of Crystal. Although Crystal may love her children, as is argued in her brief, this alone is not sufficient. The effect of the trial court's decision on the parent is not to be considered. R.C. 2151.414(C). The determination as to whether to terminate parental rights is left to the discretion of the trial court. *In re H.M.*, 3d. Dist. Logan Nos. 8-13-11, 8-13-12, 8-13-13, 2014-Ohio-755, 9 N.E.3d 470. As long as there is competent credible evidence to support the judgment by clear and convincing evidence, the appellate court shall affirm the judgment of the trial court. *Id*. at ¶ 26. The evidence in this case indicates that the trial court's judgments are clearly and convincingly supported by competent and credible evidence. Therefore, the assignment of error is overruled.

{¶20} Having found no error prejudicial to appellant in the particulars assigned and argued, the judgments of the Court of Common Pleas of Marion County, Family Division, are affirmed.

*Judgments Affirmed*

**ROGERS, P.J. and PRESTON, J., concur.**

**/hlo**