[Cite as *In re L.D.*, 2019-Ohio-4990.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

IN RE: L.D.                     :          APPEAL NO. C-190470
                                               TRIAL NO.    F17-914z

                    :            *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 6, 2019

*Anzelmo Law* and *James A. Anzelmo,* for Appellant Mother,

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Jonathan Halvonik,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services.

**CROUSE, Judge.**

{¶1} Mother has appealed from the trial court's entry granting permanent custody of her child L.D. to the Hamilton County Department of Job and Family Services ("JFS"). In one assignment of error, she argues that JFS failed to establish by clear and convincing evidence that it should be awarded permanent custody of L.D. We overrule mother's assignment of error and affirm the judgment of the juvenile court.

### *Procedural Background*

{¶2} JFS was granted interim custody of L.D. on March 28, 2017, after mother's boyfriend overdosed in the home and concerns arose about the safety of L.D. Mother admitted to using methamphetamine, opiates, and marijuana at the time. L.D. also tested positive for amphetamine and phentermine at birth. On June 29, 2017, L.D. was adjudicated "abused and dependent," and JFS was granted temporary custody. On December 4, 2017, JFS filed a motion to award custody to mother's sister, but later withdrew the motion. On January 22, 2019, JFS moved for permanent custody. After a hearing, the magistrate ordered that mother's parental rights be terminated with respect to L.D., and that L.D. be placed in the permanent custody of JFS. Mother filed objections to the magistrate's decision. After a hearing, the juvenile court overruled mother's objections and adopted the decision of the magistrate.

***Sole Assignment of Error***

{¶3}   Mother's sole assignment of error is that the state failed to meet its burden of establishing by clear and convincing evidence that permanent custody of L.D. should be awarded to JFS.

{¶4}   In a case involving the termination of parental rights, an appellate court reviews the record and determines whether the juvenile court's decision was supported by clear and convincing evidence.  *In re W.W.,* 1st Dist. Hamilton No. C-110363, 2011-Ohio-4912, ¶ 46.  Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."  *Id.*;  *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.  Where some competent and credible evidence supports the court's decision, this court will not substitute its judgment for that of the juvenile court.  *In re W.W.* at ¶ 46.

{¶5}   "Although the termination of the rights of a natural parent should be an alternative of 'last resort,' such an extreme disposition is nevertheless expressly sanctioned [under R.C. 2151.353] when it is necessary for the 'welfare' of the child."  *In re Cunningham,* 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979), quoting *In re Fassinger,* 42 Ohio St.2d 505, 330 N.E.2d 431 (1975).

{¶6}   When a child has been previously adjudicated dependent and temporary custody has been granted to JFS pursuant to R.C. 2151.353(A)(2), JFS may move for permanent custody of the child pursuant to R.C. 2151.413(A) and 2151.414.  The court will grant permanent custody to JFS if a two-prong test is satisfied.  *See* R.C. 2151.414(B).

### First Prong—R.C. 2151.414(B)

**{¶7}** The first prong can be satisfied by any one of five conditions. R.C. 2151.414(B)(1). One condition is if the child has been in the temporary custody of JFS for 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). The point for determining when the 12-in-22 clock starts is either the date the child was adjudicated dependent, or 60 days after the removal of the child from the home, whichever is earlier. R.C. 2151.414(B)(1)(e). The endpoint for the 12-in-22 clock is the date the agency filed the motion for permanent custody. *In re C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 22.

**{¶8}** In the present case, the 12-in-22 clock started on May 27, 2017, which is 60 days after L.D. was removed from the home. The clock stopped on January 22, 2019, when JFS filed the motion for permanent custody. L.D. was in the custody of JFS during this entire time period; therefore, the 12-in-22 condition was met.

### Second Prong—R.C. 2151.414(D)(1)

**{¶9}** Under the second prong, the trial court must determine whether granting permanent custody to the agency is in the best interest of the child. *See* R.C. 2151.414(B)(1). Pursuant to R.C. 2151.414(D)(1), the court may find that permanent custody is in the best interest of the child upon consideration of all relevant factors, including: (a) the child's relationships with the parents, siblings, foster caregivers, and any other person who may significantly affect the child; (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with consideration granted for the child's maturity; (c) the custodial history of the child, including whether the child has been in the custody of a public child services agency for 12 or more months in a consecutive 22-month period; (d) the child's need for a

legally secure permanent placement; and (e) whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

**{¶10}** No single factor is given greater weight or heightened significance. *In re P.,* 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 35, citing *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57. The magistrate found that all of the factors in R.C. 2151.414(D)(1)(a) – (e) were satisfied.

**{¶11}** The JFS caseworker, Rachel Kennedy, testified that L.D. is bonded with the foster family, the foster family provides for L.D., he is emotionally well-adjusted to the home, and the family wants to adopt L.D. There was clear and convincing evidence to support the magistrate's finding that R.C. 2151.414(D)(1)(a) was satisfied.

**{¶12}** In support of her finding that R.C. 2151.414(D)(1)(b) was satisfied, the magistrate stated that the guardian ad litem ("GAL") recommended permanent custody. However, (b) addresses the wishes of the child, not the GAL. *See In re M.U.,* 1st Dist. Hamilton Nos. C-130809 and C-130827, 2014-Ohio-1640, ¶ 15 (regardless of the GAL's permanent-custody case recommendation, R.C. 2151.414(D)(1)(b) required the court to consider the wishes of the children that they be reunited with mother).

**{¶13}** L.D.'s attorney and his GAL both agreed with JFS that permanent custody should be given to the agency. However, there was no testimony regarding L.D.'s wishes. Since he was only three and half years old at the time of the permanent-custody hearing, his wishes would not be given much weight anyway. Nevertheless, there is not clear and convincing evidence to support the magistrate's finding that L.D. wished to be with the foster family over his mother.

{¶14} The magistrate found that R.C. 2151.414(D)(1)(c) was satisfied by the 12-in-22 condition because L.D. had been in the custody of JFS for 26 consecutive months. As discussed above, the 12-in-22 clock did not start until May 27, 2017, and stopped on January 22, 2019, a period of approximately 19 months. Although the magistrate's calculation of time was off by seven months, there is clear and convincing evidence that the 12-in-22 condition was satisfied.

{¶15} R.C. 2151.414(D)(1)(d) requires that the court find that L.D. is in need of a legally secure permanent placement that cannot be achieved without a grant of permanent custody. The magistrate did not specifically cite any facts in support, but listed facts in other parts of her decision that we believe support her finding that (d) is supported by clear and convincing evidence.[1]

{¶16} A legally secure permanent placement "is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." *In re P.,* 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, at ¶ 42, quoting *Matter of K.W.,* 2018-Ohio-1933, 111 N.E.3d 368, ¶ 87 (4th Dist.2018). Incarceration during the pendency of the case, persistent drug use, failure to complete case-plan services, and the lack of an appropriate family member to take custody of the child all indicate a parent's inability to provide a legally secure permanent placement. *See In re A.M.Z.,* 1st Dist. Hamilton Nos. C-190292, C-190317 and C-190326, 2019-Ohio-3499, ¶ 9.

---

[1] As we recently noted in *In re P.,* 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 9-10, and *In re A.M.,* 1st Dist. Hamilton No. C-190027, 2019-Ohio-2028, ¶ 37, this court strongly encourages the juvenile court to discuss each statutory factor.

{¶17} Mother was incarcerated from May 2017 to September 2017 for violating probation by committing a theft offense. At the time she was incarcerated, she was on probation in three separate counties for crimes committed in those counties. After serving her jail sentence, she successfully completed probation in all three counties.

{¶18} Kennedy testified that mother completed a diagnostic assessment for substance abuse and was referred to Talbert House for counseling. Mother did not start counseling until January 2019, the same month JFS moved for permanent custody. Mother was also ordered to complete toxicology screens. Kennedy referred mother for three toxicology screens, one in September 2018, and two in February 2019. Mother did not attend any of the screens. Also, other caseworkers referred mother for additional toxicology screens in 2018, which she did not attend. Moreover, mother testified that she had used methamphetamine as recently as January 2019.

{¶19} Mother testified that she completed ten out of the 14 classes in the Confidence to Change course, which targets substance abuse. She testified that she stopped going to the classes because JFS would not accept the assessments from Confidence to Change due to the fact that the course was based in a different county. Kennedy's testimony refuted this claim. She testified that she told mother to send JFS documentation of her assessments from the Confidence to Change program, but mother never did so. Also, mother admitted on cross-examination that one of the reasons she stopped going to the classes was because she thought her sister was going to get custody of L.D.

{¶20} Mother was ordered to visit with L.D. beginning in June 2018. Diamond Hall worked at the Family Nurturing Center and supervised mother's visits with L.D. from August 2018 to December 2018. Hall testified that she suggested to JFS that mother's visitation supervision level go from "facilitated" to the less strict "monitored," indicating that mother did not need one-on-one supervision during her visits with L.D. Hall testified that mother was appropriate during visits with L.D., and did not appear to be under the influence. However, mother admitted to missing some visits.

{¶21} Mother did complete some of her case-plan requirements. She was ordered to maintain stable housing and employment. Kennedy testified that mother's home was "appropriate," and that mother has maintained employment throughout the case. Mother was ordered to complete parenting education classes. Dawn Merritt worked with mother in her parenting education course, and testified that mother successfully completed the course in February 2019.

{¶22} Although two relatives filed motions with the court requesting permanent custody of L.D., both motions were dismissed when the relatives did not appear in court. Additionally, father has not complied with any of the juvenile court's orders, and has not visited L.D. at all during the pendency of the case.

{¶23} Mother made some progress on her case plan, and had positive visits with L.D., but that is not enough to overcome her continued drug use and failure to complete any sort of drug treatment. Her incarceration also cuts against her ability to provide a secure home. There is clear and convincing evidence to support the magistrate's finding that L.D. is in need of a legally secure permanent placement, which cannot be achieved without granting permanent custody to JFS.

{¶24} R.C. 2151.414(e) requires the court to determine if any of the conditions in R.C. 2151.414(E)(7) to (11) are satisfied. The magistrate found that the conditions in (E)(9) and (E)(10) were satisfied.

{¶25} R.C. 2151.414(E)(9) requires that the court find that

the parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times * * *.

R.C. 2151.414(E)(9).

{¶26} The magistrate found (E)(9) satisfied, stating that mother was offered drug treatment, multiple toxicology screens, and a chemical-dependency assessment, but that she failed to follow through with any drug-related services and admitted to using methamphetamine in January 2019. L.D. was born with drugs in his system, which demonstrates one incident of being placed at substantial risk of harm due to mother's drug use. *See In re J.D.,* 7th Dist. Mahoning No. 14 MA 33, 2014-Ohio-5726, ¶ 50. Also, mother's boyfriend overdosed in her home. This incident initiated the investigation by JFS, which led to L.D. being removed from the home.

{¶27} There is no doubt that mother failed to complete any sort of drug-treatment program. She completed part of the Confidence to Change course, but dropped out. Mother failed to take any substantial steps to remedy her drug problem, and even admitted to using methamphetamine as recently as January 2019. However, there was no testimony as to whether mother enrolled and dropped out of drug treatment a second time, or refused to go back into treatment. *See In re N.P.,* 3d Dist. Marion Nos. 9-15-22 and 9-15-23, 2015-Ohio-4912, ¶ 17 (mother began

treatment several times but never completed it, in addition to failing drug screens); *In re K.M.,* 10th Dist. Franklin Nos. 15AP-64 and 15AP-66, 2015-Ohio-4682, ¶ 40 (mother did not comply with four different treatment programs and refused to enter an inpatient program); *In re E.-J.,* 1st Dist. Hamilton No. C-190007, 2019-Ohio-1519, ¶ 34 (mother refused services in Iowa and consistently refused or failed to complete services in Hamilton County).

{¶28} Without evidence that mother rejected or refused to participate in treatment two or more times, there is not clear and convincing evidence to support the magistrate's finding that R.C. 2151.414(E)(9) was satisfied.

{¶29} In order for R.C. 2151.414(E)(10) to be satisfied, the court must find that the parent has abandoned the child. The magistrate only cited this section in reference to father, whom the magistrate stated has not had any contact with L.D. in over two years. A parent is presumed to have abandoned his or her child when the parent has failed to visit or maintain contact with the child for more than 90 days. R.C. 2151.011(C). There is clear and convincing evidence that father abandoned L.D.

{¶30} Although not a part of the enumerated factors of the best-interest analysis, the magistrate found that R.C. 2151.414(E)(14) was satisfied. In relevant part, (E)(14) states that "the parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child * * *." In support of her finding, the magistrate merely stated, "Mother and father have not financially supported this child." However, the test is not whether a parent has failed to provide for the child, it is whether the parent is *unwilling* to provide for the child. L.D. was adjudicated "abused and dependent" on June 29, 2017, providing evidence that mother did not provide for L.D. But, there is no evidence in the record that mother

10

was unwilling to provide for L.D. Also, there was no testimony presented that financial support was requested or necessary while L.D. was in foster care. The magistrate's finding that (E)(14) was satisfied is not supported by clear and convincing evidence.

{¶31} The magistrate's findings regarding the conditions in R.C. 2151.414(D)(1)(b), (E)(9), and (E)(14) are not supported by clear and convincing evidence. Regardless, the magistrate's findings that the conditions in R.C. 2151.414(D)(1)(a), (c), (d), and (E)(10) were satisfied, and that it is in the best interest of L.D. to be placed in the permanent custody of JFS, are supported by clear and convincing evidence.

### *Conclusion*

{¶32} Both prongs of the R.C. 2151.414 analysis are satisfied. It is necessary for the welfare of L.D. that he be placed in the permanent custody of JFS. Mother's sole assignment of error is overruled and the judgment of the juvenile court is affirmed.

Judgment affirmed.

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.