[Cite as *In re A.M.Z.*, 2019-Ohio-3499.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.M.Z., A.L.Z., T.M.Z., E.Z. AND E.Z. | : | APPEAL NOS. C-190292 C-190317 C-190326 |
| | : | TRIAL NO. F17-1650X |
| | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  August 30, 2019

*Constance Murdock*, for Appellant Mother,

*In re Williams* Attorney *Michael A. Lanzillotta*, for Appellants, A.M.Z. and A.L.Z.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Jacqueline O'Hara*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Pedersen*, Assistant Public Defender, Guardian ad Litem for Appellee minor children, A.M.Z., A.L.Z., T.M.Z., E.Z. and E.Z.

BERGERON, Judge.

{¶1}     In this parental termination case, the juvenile court presided over two separate proceedings: one concerning Mother's three older children and another concerning Mother's twin girls, who were born during the course of the initial proceedings.  These proceedings generated separate orders granting the Hamilton County Department of Job and Family Services' (the "agency") application for permanent custody over all five children.  Our review of the record reveals no reason to disturb that conclusion.  We therefore affirm the juvenile court's decisions.

I.

{¶2}     This case began with the agency's emergency, ex parte motion for an interim order of temporary custody of A.M.Z., A.L.Z., and T.M.Z. due to, among other things, chronic homelessness, drug use, domestic violence, and criminal infractions on the part of their parents.  Another sibling, A.Y.-C., had been subject to this proceeding, but subsequently reached the age of majority.  A.M.Z., A.L.Z., and T.M.Z. were adjudicated dependent, with A.L.Z. also being adjudicated neglected.  The agency later moved to modify temporary custody to permanent custody.  With that motion pending, the children's paternal grandmother petitioned for custody.  After trials on both motions, the magistrate granted the agency's permanent custody motion, to which Mother and Father objected.  The juvenile court accepted the magistrate's decision over these objections and granted the agency permanent custody over the three children.

{¶3}     Between the initial adjudication and subsequent disposition as to the three elder children, Mother gave birth to twins: E.Z.1 and E.Z.2.  She and the twins tested positive for cocaine at their birth.  As a result, the juvenile court placed the

2

girls in the agency's temporary custody following an emergency, ex parte request for an interim order. In the proceedings regarding the twins, Mother and Father objected to the same magistrate presiding over the case, given that she had just granted permanent custody of their older children to the agency. While the agency initially objected to the move, the parties ultimately agreed to place the adjudication and disposition of the twins before a juvenile court judge (a different juvenile court judge from the judge that would ultimately determine disposition as to A.M.Z., A.L.Z. and T.M.Z). This juvenile court judge adjudicated E.Z.1 and E.Z.2 dependent and neglected and, shortly thereafter, granted the agency's permanent custody motion.

{¶4} While T.M.Z. was too young to express an opinion, the oldest children, A.M.Z and A.L.Z., through counsel, appeal the entry terminating the parental rights of their parents—having consistently maintained their desire to remain with their parents or another family member. Mother also appeals that entry, as well as the entry granting the agency permanent custody over the twins. We consolidated the cases of all five children into a single proceeding before this court for efficiency's sake.

II.

{¶5} Mother and A.M.Z and A.L.Z. assert the same, single assignment of error: that clear and convincing evidence did not support the juvenile court's determination that granting the agency permanent custody was in the children's best interests. Parental termination, the permanent divorce of children from their natural parents, is a "measure of last resort." *In re T/R/E/M*, 1st Dist. Hamilton No. C-180703, 2019-Ohio-1427, ¶ 12. Such a judgment is appropriate only after satisfaction of the two-part test set forth in R.C. 2151.414(B): "(1) permanent custody is in the

child's best interest and (2) that one of the conditions in R.C. 2151.414(B)(1)[(a)] through (e) applies." *In re J.G.S.*, 1st Dist. Hamilton Nos. C-180611 and C-180619, 2019-Ohio-802, ¶ 34, citing *In re M., R., & H.*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 17. The juvenile court's determination concerning this two-part test must be supported by clear and convincing evidence in the record. *In re T/R/E/M* at ¶ 10. Clear and convincing evidence "is evidence sufficient to 'produce in the mind of the trier of fact[] a firm belief or conviction as to the facts sought to be established.' " *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46, quoting *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42.

{¶6} As to the first prong, best interests, juvenile courts are statutorily required to consider the factors enumerated at R.C. 2151.414(D)(1).[1] With respect to the three elder children, the magistrate's decision chronicled the history of the case and walked through relevant evidence—in particular, testimony from an employee from Beech Acres Parenting and the agency caseworker. In adopting the magistrate's decision, the juvenile court referenced its consideration of the R.C. 2151.414(D)(1) factors. The records in both cases are replete with support for the juvenile court's best interests determinations as to all five children, as we will detail below.

{¶7} We begin with R.C. 2151.414(D)(1)(a) and (b), which concern "[t]he interaction and interrelationship of the child with the child's parents, siblings,

---

[1] The twins' case proceeded directly to an adjudication and disposition before the juvenile court without first being heard by a magistrate. We note that the juvenile court's dispositional entry does not patently reflect due consideration of the R.C. 2151.414(D)(1) best interests factors. While this raises a red flag in the parental-termination context, *In re T/R/E/M* at ¶ 12 ("The court must consider all relevant factors within R.C. 2151.414(D)(1) to determine whether permanent custody is in the best interest of the child."), the appellants do not challenge this aspect of the entry on appeal. We therefore decline to address an issue not raised by the parties. *See* App.R. 12(A)(1)(b).

relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child" and "the wishes of the child" considered in the context of his/her maturity level. While acknowledging A.M.Z.'s and A.L.Z.'s desires to remain with their Mother or a family member, the magistrate noted that their guardian ad litem believed that their best interests would be furthered with the agency having permanent custody. Mother stopped visiting the children leading up to trial, and to the extent that the parents participated in visits, they never progressed beyond the most restrictive level. Although Mother cites bedrest as the reason she had curtailed her visits, the trial took place nearly three months following the birth of the twins, and they were never in her care. Testimony from multiple sources demonstrated that the children's Father has anger and aggression issues. Testimony also established that the children had virtually no bond with their paternal grandmother—leaving aside the fact that her home was unsuitable for the children due to cigarette smoke, that the children were left unsupervised with their mother during limited, agency-arranged visits to her home, and strong suggestions that the grandmother was overwhelmed by the prospect of caring for the children. A.M.Z. and A.L.Z. resided in the same foster home and both were engaged in therapeutic services for behavioral disorders. The agency caseworker testified that A.M.Z. presented as a happy child in foster care and A.L.Z. exhibited overall improvement. The agency anticipated that T.M.Z. would be adopted by his separate foster home, where he had been making significant developmental progress. Shortly after birth, the twins were placed with maternal relatives in Kentucky absent objection from Mother. The agency caseworker described their placement as "phenomenal" and anticipated adoption. Mother, on the other hand, had visited the

twins only a handful of times since their birth in late 2018, despite the fact that they were placed with members of her family.

{¶8} R.C. 2151.414(D)(1)(c) concerns the children's custodial history. While the three elder children were not in the agency's custody for over a year, the agency sought custody on an emergency, ex parte basis. The agency pursued custody of the twins on the same basis just months after they were born and, given the case history with respect to their siblings, contemporaneously sought permanent custody. The twins thus were never in Mother's care—having been placed with relatives upon their discharge from the hospital after birth.

{¶9} R.C. 2151.414(D)(1)(d) concerns the children's "need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." Both parents have been incarcerated during the pendency of these cases. Concerns over chronic drug use are apparent—given the presence of cocaine in the twins upon birth. Both parents doggedly resisted diagnostic assessments, but upon finally completing hers, mother's results displayed post-traumatic stress, depression, and anxiety disorders, which prompted recommendations for psychiatric support treatment, case management, possible medication compliance, a domestic violence assessment, parenting education, and random toxicology screens. Neither parent cooperated with random toxicology screens, and the agency never received confirmation that Mother attended any therapy or participated in community psychiatric supportive treatment. After being assessed for domestic violence, Father did not participate in a related program to which he was referred, nor did Mother participate in the support and education program that she was offered. While they completed parenting classes, they did not

6

finish all aspects of the program. Paternal grandmother was the only family member to step forward to seek custody, but her placement was ruled out for the reasons already noted. All of the above points to the agency's custody as the only avenue available for legally secure placement of these children for purposes of R.C. 2151.414(D)(1)(d).

{¶10} Finally, R.C. 2151.414(D)(1)(e) directs the court to R.C. 2151.414(E)(7) to (11) for the final elements of the best-interests analysis. There, the reader finds a list of considerations related to specific criminal activity, withholding food or medical care, especially problematic drug abuse, abandonment, and prior parental terminations. This last consideration was apparent to the juvenile court, given the significant overlap between the two cases.

{¶11} All of the above confirms that Mother could not provide a safe and healthy environment for her children. The record shows, clearly and convincingly, that the best interests of the children required that the agency be granted permanent custody of the children.

{¶12} For purposes of the second prong under R.C. 2151.414(B), we note that neither the older children nor the twins have been in the agency's temporary custody for 12 or more months of a consecutive 22-month period as referenced in R.C. 2151.414(B)(1)(d). As to the elder children, the juvenile court awarded the agency interim temporary custody on June 28, 2017, and the agency moved for permanent custody well within a year, on March 22, 2018. Likewise, as to the twins, the juvenile court awarded the agency interim temporary custody on January 29, 2019, and the agency moved concurrently for permanent custody. Instead, the juvenile court found that the children could not be placed with either of their parents within a reasonable

time or should not be placed with their parents under R.C. 2151.414(B)(1)(a), which in turn requires clear and convincing evidence that at least one of the conditions listed under R.C. 2151.414(E) was present as to the parents.

{¶13} Among the factors listed in R.C. 2151.414(E) are those related to continued and repeated failure to take advantage of case plans intended to remedy the outside-the-home placement, chronic chemical dependency that persistently affects the ability of the parent to provide an adequate home, and a demonstrated lack of commitment by the parents to the children. R.C. 2151.414(E)(1), (2) and (4). The magistrate in A.M.Z., A.L.Z., and T.M.Z's case referenced the fact that their parents had been evicted from their home a few weeks prior to trial, that supervised visits had been terminated due to nonattendance, that their twin siblings—born during the proceedings—tested positive for cocaine and, generally, that their parents had not made substantial progress with their case plan. We have reviewed the record and conclude that these findings are clearly and convincingly supported by the documentary and testimonial evidence presented below. The determination is even more straightforward with respect to the twins, in the wake of the juvenile court's prior termination of parental rights for the elder children at the time of their disposition. Under R.C. 2151.414(E)(11), this fact alone was sufficient to underpin a finding that the twins could not be placed with their parents within a reasonable time or should not be placed with them absent clear and convincing proof that they were in a position to give the twins legally secure and adequate care notwithstanding the prior termination. Their parents proffered no such proof.

{¶14} For their part, the appellants only sketch in cursory fashion any legal argument in their briefs. They seem to rely on the fact that Mother completed

8

certain aspects of her case plan (the classroom portion of parenting classes) and behaved appropriately during visits with her children. But this characterization of Mother's adherence to her case plan stands incomplete, given the other portions of the record summarized above. They cite Mother's stable income ($771/month in Social Security benefits) and stable housing—notwithstanding a recent eviction and the fact that she does not, currently, live independently. At the twins' disposition hearing, she did not present any cogent plan for obtaining stable housing or providing for the varying mental health and behavioral issues facing her children. While at times Mother reported that she had ended the relationship with the children's Father—a relationship marred by a cloud of domestic violence—Father reported that they planned to reconcile following the disposition of his pending criminal charges. In her testimony at the twins' disposition hearing, she equivocated on the matter, raising additional concerns about the safety and security of the children.

{¶15} The appellants also criticize the speed at which the parental terminations took place in this case—particularly as to the twins. But the record reflects, at best, partial compliance with Mother's case plan. We appreciate the desire of A.M.Z. and A.L.Z. to remain with their Mother, as well as Mother's sentiments, expressed at the twins' dispositional hearing, that she wanted to effect change in her behavior and case compliance. But the record simply does not reflect that a reasonable time frame, even if allowed, would have sufficed to remedy the varied and severe substance abuse, mental health, and domestic violence issues that prevent Mother from serving as a legally adequate caretaker for her children, particularly given her lack of progress throughout the course of the proceedings.

9

{¶16} For the foregoing reasons, we find that the juvenile court's determinations as to these children were supported by clear and convincing evidence. We overrule the appellants' assignment of error and affirm the juvenile court's judgments.

Judgments affirmed.

**MOCK, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry this date.