**[Cite as *In re J.S.*, 2022-Ohio-4539.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: J.S., B.S., and S.S.

:      APPEAL NO. C-220456
         TRIAL NO. F-18-1535X

:

:      *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 16, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Victoria Link*, for the Guardian Ad Litem for the minor children,

*Christopher P. Kapsal*, for Appellant Father.

**BERGERON, Judge.**

{¶1} In October 2018, two children of appellant Father, now nine-and-a-half-year-old J.S. and six-and-a-half-year old B.S., were placed in the emergency custody of appellee Hamilton County Department of Job and Family Services ("HCJFS"). Subsequently-born (in May 2020) S.S.,[1] another child of Father and now two and a half years old, also ended up in HCJFS's custody shortly after birth. After a hearing, the juvenile court granted HCJFS's motion for permanent custody of J.S., B.S., and S.S. Father now appeals that judgment, criticizing the juvenile court's permanent custody decision under applicable Ohio law as well as based on the Indian Child Welfare Act ("ICWA"). Based on our review of the record in this matter, however, we agree with the juvenile court's decision and affirm its judgment.

I.

{¶2} In October 2018, HCJFS became aware of J.S. and B.S. after Mother crashed her car while driving intoxicated with the two elder children in the car. Further investigation revealed abusive behavior from Father towards Mother, including an incident where Father struck Mother in the face, causing a gash which required stiches—Father would eventually plead guilty to this domestic violence offense and be incarcerated for six months. After HCFJS became involved with the family, the court placed J.S. and B.S. in temporary custody of the agency, and S.S. in interim custody of the agency shortly after his birth.

{¶3} Unfortunately, this is not the first encounter of Father and Mother with child services or the legal system—while previously residing in Arizona, Mother had

---

[1] Although both appellant, appellee, and the guardian ad litem refer to the youngest child in their briefs as "S.S." the juvenile court and magistrate below identifies this child as "S.J." For clarity, we will also refer to the youngest child as "S.S."

2

her parental rights over four of her other children terminated, and Father temporarily lost custody of J.S. there. A swirling array of substance abuse and violence followed the couple as their family grew. Mother struggled with various substances, including abusing cocaine, alcohol, marijuana, fentanyl, and heroin. Likewise, Father's violence and temper cast a pall over the relationship—both committing domestic abuse towards Mother, with allegations of controlling and verbally abusive behavior leading to his domestic violence conviction, and serving other stints of incarceration totaling 25 years due to convictions including felonious assault and aggravated assault.

{¶4} Despite these obstacles, HCJFS developed a case plan to facilitate reunification between Father, Mother, and their children. This plan included visitation, parenting education, domestic violence education, behavioral counseling, substance abuse treatment, and mental health treatment for Father and Mother, tailored to their respective needs. Although both parents accepted their treatment plans, they made minimal progress at best.

{¶5} Mother initially engaged in her various treatment plans, but this did not last long, as lengthy periods of absence and non-engagement ensued. Part of this can be attributed to her homelessness accompanied with continued substance abuse from mid-2019 to mid-2020. Mother routinely refused to comply with the required treatments, including missing toxicology screens, missing visitation appointments, and forbidding HCJFS from visiting her. And at the time of the custody hearing, Mother had an outstanding criminal charge against her for threatening to kill Father during a video visit with the children.

{¶6} To Father's credit, he did engage in some of his care plan, at least more so than Mother. When he was not incarcerated, he managed to regularly visit the

3

children. Although he initially denied needing domestic violence education, he would eventually complete a domestic violence education program. He also testified that he completed a fatherhood program in 2021. Supported financially by disability benefits, Father resided in housing provided by a homelessness services agency, and testified in 2021 that he hoped to return to Arizona to stay with family there.

{¶7} But Father's saga with the HCJFS case plan is clouded with serious denial of any wrongdoing on his part. Although part of his reunification plan, Father refused to submit to or participate in a mental health diagnostic test, various mental health treatments (even though he self-reported a diagnosis of post-traumatic stress disorder), and educational programming to support family members struggling with addiction.

{¶8} In July 2021, the court convened a hearing regarding HCJFS's permanent custody motion concerning J.S. and B.S. and a disposition for S.S., who was in the interim custody of HCJFS at the time. At the custody hearing, two caseworkers involved in the matter testified, in addition to Father. HCJFS and the guardian ad litem ("GAL") advocated for permanent custody to be granted to HCJFS, whereas Father vied for custody himself, and Mother—through her attorney—requested custody for herself or in the alternative for Father. The children, through their attorney, expressed their desire for custody with either parent.

{¶9} After the hearing, the magistrate granted permanent custody of the children to HCJFS. As a threshold matter, the magistrate recognized that the two older children had been in its temporary custody for at least 12 months out of a 22-month period. R.C. 2151.414(B)(1)(e). Further, HCJFS demonstrated that Mother "did not make satisfactory progress in case plan services and has not demonstrated

the necessary behavior change * * * [and Father's] utilization of rehabilitative services was not sufficient to facilitate the behavioral change necessary to resume and maintain parental duties."

{¶10} Additionally, the magistrate reasoned that despite their express wishes at the time, it was in the children's best interests to be placed in permanent custody of HCJFS. R.C. 2151.414(D)(1). In considering the relevant factors, the magistrate highlighted the following: the children are bonded to their current foster caregivers, the GAL supported a grant of permanent custody to HCJFS, the children had been in agency care for multiple years (J.S. and B.S. since 2018, and S.S. since 2020), and a strong need for the children to be in a safe, secure, and permanent placement which could not be achieved without granting permanent custody to HCJFS. Therefore, the magistrate concluded, the children should not be placed with either parent. R.C. 2151.414(B)(2).

{¶11} After Father objected to the magistrate's decision, the juvenile court remanded the matter to the magistrate to determine the application of the ICWA—the children were deemed to be "Indian Children" as defined by the act and confirmed by the Tohono O'odham Nation tribe ("the Nation"), given Mother's membership in the Nation. At a second hearing to determine the ICWA's applicability, a qualified expert witness under the ICWA and enrolled tribe member of the Nation testified that "[t]he Nation's position is to continue having the children stay with their foster home placements that they're currently in." The juvenile court would eventually agree with this conclusion in its decision granting permanent custody to HCJFS, leading to this appeal by Father (Mother declined to appeal).

5

II.

**{¶12}** Father initially protests that the juvenile court failed to demonstrate sufficient, competent evidence to support the magistrate's decision to grant permanent custody to HCJFS under R.C. 2151.414 by a clear and convincing standard, and because its decision is also against the manifest weight of the evidence, the juvenile court erred and abused its discretion in adopting that decision.

**{¶13}** The juvenile court's determination to grant permanent custody to HCJFS must be supported by "clear and convincing" evidence. *In re X.M.W.*, 1st Dist. Hamilton Nos. C-190568 and C-190595, 2020-Ohio-449, ¶ 7, quoting *In re A.M.Z.*, 1st Dist. Hamilton Nos. C-190292, C-190317, and C-190326, 2019-Ohio-3499, ¶ 5. "Clear and convincing evidence is sufficient evidence to 'produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' " *In re X.M.W.* at ¶ 7, quoting *In re L.D.*, 1st Dist. Hamilton No. C-190470, 2019-Ohio-4990, ¶ 4.

**{¶14}** In a sufficiency of the evidence review, we must determine "whether some evidence exists on each element. It is a * * * question of law." *In re P. & H.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 7. "As to a challenge to the weight of the evidence, 'we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the [juvenile] court clearly lost its way and created * * * a manifest miscarriage of justice' warranting reversal." *In re X.M.W.* at ¶ 8, quoting *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 16.

**{¶15}** Before we begin however, we must address Father's failure to provide record citations in support of his assignments of error. This alone gives us cause to disregard Father's arguments at the outset. App.R. 12(A)(2) ("The court may disregard

an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *."). When a party makes a record-based claim (such as the court's decision conflicted with the evidence), it is nearly impossible for us to evaluate that if it neglects to include record citations for us to review. But given the significance of this case—the termination of parental rights—we will address Father's arguments notwithstanding the App.R.12 violation.

{¶16} If HCJFS moves for permanent custody of children, as it did for the children here, "[t]he court will grant permanent custody to HCJFS if a two-prong test is satisfied." *In re S.D.*, 1st Dist. Hamilton Nos. C-200045 and C-200084, 2020-Ohio-3379, ¶ 13. "To grant the motion, courts first must find that any of the factors in R.C. 2151.414(B)(1)(a)-(e) apply, or that (B)(2) applies." *In re K.H.-T.*, 8th Dist. Cuyahoga No. 111001, 2022-Ohio-1504, ¶ 30. Second, "[t]he court must find * * * [that] permanent custody is in the best interest of the children under R.C. 2151.414(D)(1)(a)-(e)." *In re. S.D.* at ¶ 13.

{¶17} The juvenile court identified R.C. 2151.414(B)(1)(d) as one of the enumerated factors that apply to the children—that they have been in the temporary custody of a public children service agency for 12 or more months of a consecutive 22-month period. This certainly applies to J.S. and B.S., as they entered the temporary custody of HCJFS in December 2018, and the motion to modify the children's custody to permanent custody was filed in February 2020—a period of over 12 months. However, and as both Father and HCJFS agree, this analysis cannot apply to S.S. given that he was later adjudicated dependent on a complaint seeking permanent custody, and the hearing on permanent custody for his older siblings occurred simultaneously with his disposition.

{¶18} But HCJFS established the first prong of the two-prong test with respect to S.S. through R.C. 2151.414(B)(2). R.C. 2151.414(B)(2) allows a court to grant permanent custody if it determines that the child should not be placed with either parent because the parent does not comply with the reunification plan. R.C. 2151.414(B)(2) and (E)(1) ("[T]he court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent * * *." "If the court determines, by clear and convincing evidence, at a hearing * * * [that] [f]ollowing the placement of the child outside of the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home * * * the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]").

{¶19} As the juvenile court aptly concluded, even though he did make some progress, Father had not adequately completed his reunification plan. His incarceration, caused by his own abuse against Mother, prevented him from visiting the children regularly. And as demonstrated at the custody hearing, Father refused to submit to various mental health testing as well as rehabilitative programming. At the end of the day, the record establishes that Father failed to remedy some of the issues that caused him to lose custody of the children in the first place.

{¶20} Turning to the second prong of the two-prong test (which applies to all three children), the court relied on clear and convincing evidence to conclude that permanent custody in favor of HCJFS furthered the best interests of the children. In considering the best interests of the children, the juvenile court considered various factors, including the relationship the children have to their parents or current caregivers, the wishes of the children (either expressly or through the GAL), the custodial history of the children, and the children's need for a permanent and secure home. *See* R.C. 2151.414(D)(1)(a)-(e).

{¶21} In this respect, the court determined that the children are all healthily bonded to their caregivers, and with HCJFS's support, the children have a true opportunity to receive safe, secure, and permanent placements. Although the juvenile court acknowledged that the children—at least the two older children—had expressed a desire to return to their parents, given their youth and the extant record, it was not unreasonable for the court to heed the advice of the GAL instead.

{¶22} This is especially so given the instability that Father and Mother created in the lives of their children thus far. Even if some of the children would prefer to be with their parents, all of them have been in custodial care and extensively involved with HCJFS at such young ages—especially S.S., who has been in custodial care since he was just a few days old—due to Mother and Father's legal and substance abuse problems. And yet, when afforded the opportunity to undertake a process that would lead to reunification with their children, Mother and Father faltered with not only their reunification plans, but also in only sporadically visiting the children while in custodial care. All told, we can confidently say that the juvenile court and magistrate were

comprehensive in finding that it served the children's best interests to have permanent custody granted to HCJFS.

{¶23} Upon a close review of the record, we find that the juvenile court appropriately relied on clear and convincing evidence to place the children in the permanent custody of HCJFS. Consequently, we overrule Father's first assignment of error.

III.

{¶24} In his second assignment of error, Father insists that the juvenile court erred in awarding permanent custody by disregarding certain requirements of the ICWA. But as HCJFS highlights in its brief, nowhere in Father's objection to the magistrate's decision did he dispute the application of the ICWA—he does so before this court for the first time. Therefore, Father has waived all but plain error. *In re F.B.*, 1st Dist. Hamilton No. C-200320, 2020-Ohio-5610, ¶ 12 ("Because Father failed to raise this issue in his objection, he has waived all but plain error.").

{¶25} The ICWA contains various provisions designed to protect Indian children when evaluating the termination of parental rights. Among other things, the statute requires active efforts to prevent the breakup of the family. 25 U.S.C. 1912(d) ("Any party seeking * * * termination of parental rights to[] an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."). And it obligates a court to consider testimony by a qualified expert witness and to determine that termination is necessary to avoid serious emotional or physical harm to the child. 25 U.S.C. 1912(f) ("No termination of parental rights may be ordered in such proceeding in the absence

10

of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.").

**{¶26}** We find no plain error on this record, particularly given that the court considered qualified expert testimony from a Nation member who reached the same conclusion as the juvenile court. Therefore, we overrule Father's second assignment of error.

\* \* \*

**{¶27}** In light of the analysis above, we affirm the juvenile court's judgment and overrule both of Father's assignments of error.

Judgment affirmed.

**MYERS, P. J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.