[Cite as *In re A.W.*, 2023-Ohio-387.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.W. | : | APPEAL NO. C-220523 |
| | | TRIAL NO. F18-1426X |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 10, 2023

*Alana Van Gundy*, for Appellant Mother,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Silvia Beck,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Kim Helfrich*, Assistant Public Defender, for Appellee Guardian ad Litem.

**CROUSE, Presiding Judge.**

{¶1} Mother appeals from the Hamilton County Juvenile Court's judgment granting permanent custody of mother's child A.W. to the Hamilton County Department of Job and Family Services ("HCJFS"). In two assignments of error, mother challenges the court's best-interest determination and contends that the court erred in its admission of certain evidence. After a thorough review of the record, we affirm the judgment of the juvenile court.

### *Background*

{¶2} On September 6, 2018, A.W. was born prematurely and began exhibiting signs of drug withdrawal shortly after birth. At that time, mother was participating in court-ordered residential drug treatment at First Step Home. On September 25, 2018, before A.W. was discharged from the hospital, HCJFS moved for an ex parte emergency order of custody. The supporting affidavit notes that mother was unable to manage her many medications and had been observed nodding off in meetings at First Step Home. HCJFS filed a complaint for temporary custody the following day, and interim custody was subsequently granted.

{¶3} In December 2018, the court held adjudication and disposition hearings. A.W. was found to be dependent and temporary custody was granted to HCJFS. HCJFS subsequently filed for two extensions of temporary custody—in July 2019 and January 2020. Both were granted.

{¶4} On July 20, 2020, HCJFS filed a motion to modify temporary custody to permanent custody. A trial on the motion was held on March 24, 2021, June 30, 2021, November 29, 2021, and May 18, 2022. Mother was represented by counsel at trial and opposed the motion. Father was represented by counsel at trial, though he

did not personally appear. Father has also struggled with substance abuse and has physically abused mother. Father's counsel voiced support for mother, but expressed at closing that father was amenable to the foster family adopting A.W. if that was found to be in his best interest.

{¶5} On May 20, 2022, the magistrate granted permanent custody to HCJFS. Mother objected to the magistrate's decision on June 3, 2022. After a remand to consider a now-resolved issue,[1] the court overruled the objections to the magistrate's decision, and approved and adopted the magistrate's decision.

{¶6} Mother timely appealed.

### *First Assignment of Error*

{¶7} In mother's first assignment of error, she contends that the juvenile court's determination that permanent custody is in A.W.'s best interest is based on insufficient evidence and is against the manifest weight of the evidence.

{¶8} When we review the sufficiency of the evidence in a permanent-custody case we "tak[e] a fresh look at the evidence to see whether it clearly and convincingly supports the court's decision." *In re M/E*, 1st Dist. Hamilton No. C-200349, 2021-Ohio-450, ¶ 8, citing *In re C. Children,* 1st Dist. Hamilton Nos. C-190650 and C-190682, 2020-Ohio-946, ¶ 8. Clear and convincing evidence is evidence that " 'produce[s] in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' " *In re L.H.*, 1st Dist. Hamilton No. C-220161, 2022-Ohio-2755, ¶ 38, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). "[W]e accept the trial court's factual determinations if they are supported by 'some

---

[1] The court remanded the matter to the magistrate to determine whether the Indian Child Welfare Act applied to this case. The magistrate determined that it did not.

3

competent and credible evidence.' " *In re M/E* at ¶ 8, quoting *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46.

{¶9} Mother's challenge to the manifest weight of the evidence directs us to consider "whether the trial court lost its way and created such a manifest miscarriage of justice in resolving conflicts in the evidence that its judgment must be reversed." *In re P/W Children*, 1st Dist. Hamilton No. C-200103, 2020-Ohio-3513, ¶ 27.

{¶10} The juvenile court is permitted to modify temporary custody to permanent custody pursuant to the two-prong test of R.C. 2151.414(B)(1). The first prong requires the court to find by clear and convincing evidence that one of the conditions in R.C. 2151.414(B)(1)(a) through (e) is satisfied. The second prong requires the court to find, also by clear and convincing evidence, that permanent custody is in the best interest of the child considering "all relevant factors," including those set forth in R.C. 2151.414(D)(1)(a)-(e).

{¶11} First, the court found by clear and convincing evidence that A.W. had been in the temporary custody of HCJFS for more than 12 months of a consecutive 22-month period in satisfaction of R.C. 2151.414(B)(1)(d). Mother does not dispute this finding. The record demonstrates that when the motion for permanent custody was filed, A.W. had been in the temporary custody of HCJFS for over 19 months. While the court also found by clear and convincing evidence that A.W. could not be placed with either parent within a reasonable time, only one condition in R.C. 2151.414(B)(1) is needed.

{¶12} Next, the court found that a grant of permanent custody to HCJFS was in A.W.'s best interest. The statutory best-interest factors include:

4

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers[, and others];

(b) The wishes of the child, * * * with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any additional factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶13} The court first considered the relationships between A.W. and mother, father, and foster mother. The court found that "there is no relationship problem between the mother and child," but noted that their relationship had been "time-limited" given A.W.'s immediate placement with his foster family. Kayla Petrosky, an ongoing caseworker at HCJFS testified that mother and A.W. are bonded, and that A.W. refers to mother as "mom" and is affectionate towards her. Laurie Hartman, the visit facilitator that worked with mother and A.W. during their weekly visits at the Family Nurturing Center, testified that mother and A.W. are bonded and that A.W. "easily transitions to visits with her [and] engages in play," converses with her, and gives her hugs. The court found that father regularly visits and is bonded with A.W. as well.

{¶14} Turning to A.W.'s relationship with his foster family, the court found that A.W. lives in the family home with his foster mother, her wife, and their teenage

5

son—and has lived there since he was around two weeks old. Foster mother expressed a desire to adopt A.W. She testified that A.W.'s relationship is strongest with her because she is A.W.'s main caretaker, but that he is also bonded with her wife and son. Foster mother's extended family also lives nearby and is bonded with A.W. Petrosky testified that A.W. is "very bonded with his foster parents," and that if he needs something or gets upset, "he runs right to foster mom." A.W. also refers to foster mother and her wife as "mom." Petrosky testified that A.W. "looks to them for comfort and * * * it's just very evident that that bond is definitely there." Petrosky testified that A.W.'s strongest bond is with his foster family.

{¶15} The court proceeded to a review of the child's custodial history under R.C. 2151.414(D)(1)(c). The court found that A.W. had been with the same foster family since two weeks after his birth in 2018, and that he had never lived with mother or father.

{¶16} The court also considered the guardian ad litem's ("GAL") testimony that, at just four years old, A.W. lacked the maturity to directly express his wishes about where he would like to live. *See* R.C. 2151.414(D)(1)(b). We have previously indicated that this factor may be "of minimal value in determining [a child's] best interests" in cases of young children. *In re P. & H.,* 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 38. The GAL recommended that A.W. be placed in the permanent custody of HCJFS.

{¶17} Turning to A.W.'s need for a legally secure placement, and whether that could be achieved without a grant of permanent custody to HCJFS, the court found that a remand of custody to mother "would be temporary in nature and would result in the child's removal for safety concerns." *See* R.C. 2151.414(D)(1)(d). Driving this

outcome were the court's concerns related to mother's supervision of A.W., mother's sobriety and engagement in mental-health treatment, mother's relationship with father, and mother's employment status.

{¶18} Conversely, the court found that there was evidence that all of A.W.'s needs were consistently being met in his foster home, and that this would continue if A.W. were adopted.

{¶19} Mother's substance-abuse history was a focal point of the court's findings. *See generally In re: X.M.W.*, 1st Dist. Hamilton Nos. C-190568 and C-190595, 2020-Ohio-449, ¶ 18 (considering mother's substance-abuse history under R.C. 2151.414(D)(1)(d)). The parties testified extensively about the validity of a positive drug screen for methamphetamine. Ultimately, the court stated that it "cannot conclude without additional evidence the validity of the claim of a positive drug test. Nevertheless, there were multiple non-appearances at requested toxicology screens and [mother's] statement that she periodically does not turn on her phone" to field the requests for those toxicology screens. The record supports this conclusion.

{¶20} The court considered, and the record also reveals that mother failed to engage in mental-health treatment as required by the case plan. Mother has been diagnosed with opioid-use disorder, depression, anxiety, and insomnia. And while she regularly visited the Center for Addiction Treatment to receive suboxone, she failed to engage with a mental-health professional. A visit note from November 2020 reads: "PATIENT STILL WITHOUT PCP OR MENTAL HEALTH PROVIDER AND HAS BEEN USING URGENT CARES AND RANDOM PROVIDERS FOR MED REFILLS." Another reads: "Patient's participation in therapy is noted to be poor."

{¶21} The court also found that mother lacked the financial resources to provide for A.W. because she did not have stable employment throughout the pendency of the case as required by her case plan. Mother testified that she had worked three temporary jobs for a few months in the summer of 2020, but that she had difficulty finding stable employment because of her prior convictions. On the last day of trial, mother testified that she had had "an acceptance letter" for a job, but it was not yet finalized.

{¶22} Mother's lack of financial resources also gave rise to a concern that she would need to rely on father, with whom she has a difficult relationship, for financial assistance. Mother testified about father physically abusing her while she was pregnant with A.W. and that she had concerns about his sobriety and mental health. While mother testified that she declined father's financial support, she also indicated that he and his family have provided financial assistance to her in the past. In fact, mother lives in the same apartment she lived in with father before she entered residential treatment, and testimony suggested that he may be paying the rent with some regularity. This bolstered the court's concern that father may have continued involvement in A.W's life if he were returned to mother's custody.

{¶23} Based on the foregoing, we hold that the juvenile court's decision was supported by the sufficiency and the manifest weight of the evidence. The court engaged in the proper analysis, and the record clearly and convincingly supports the court's best-interest determination. While there were a few conflicts in the evidence specifically related to mother's drug-screen history, the court expressly declined to rely on the positive results. And where other conflicts arose, the court did not lose its way in resolving them.

8

{¶24} The first assignment of error is overruled.

### *Second Assignment of Error*

{¶25} In mother's second assignment of error, she contends that certain evidence relied on by the trial court should have been excluded as hearsay or because it lacked foundation. Mother references approximately ten instances where she contends that evidence—primarily testimony—should have been excluded.

{¶26} Mother did not raise this issue in her objections to the magistrate's decision, so pursuant to Juv.R. 40(D)(3)(b)(iv) we review this assignment only for plain error. Plain error is found in "exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process * * *." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997); *see In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, at ¶ 60.

{¶27} The evidence that mother refers to generally falls into three categories: (1) evidence appropriately limited at trial; (2) statements of parties to the action; and (3) evidence that, even if improper, did not prejudice mother.

{¶28} First, several statements that mother refers to in her brief were objected to at trial and those objections were sustained. For instance, mother contends that certain emails related to a relapse were admitted despite being hearsay. However, when this topic was discussed at trial, trial counsel raised a hearsay objection, and the magistrate sustained the objection and repeatedly stated that he would not consider any emails or other evidence about the therapist's observations for their truth. Mother has not demonstrated, and the record does not reveal, that this evidence was improperly relied on later.

{¶29} Next, mother argues that certain testimony presenting her statements, or statements of father were hearsay. However, mother and father were both parties to the action. *See In re S.G.*, 1st Dist. Hamilton No. C-200261, 2020-Ohio-5244, ¶ 24, citing Juv.R. 2(Y) (" 'Party' means * * * the child's parent or parents * * *."). And because the statements were offered against mother, they were not hearsay under Evid.R. 801(D)(2)(a).

{¶30} Finally, some of the evidence challenged by mother simply does not rise to the level of plain error. This includes a question posed to mother about a counselor's statements to HCJFS ("So would you be shocked if [your addiction counselor] told JFS that he has tried to get you into actual therapy, and you continued to refuse?") and testimony from the GAL about A.W.'s perception of home. Even if this disputed evidence was inadmissible, mother has not demonstrated how she was prejudiced, if at all, by its admission. The second assignment of error is overruled.

### *Conclusion*

{¶31} In the light of the foregoing analysis, we overrule both of mother's assignments of error. The judgment of the juvenile court is affirmed.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.